**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LG CAPITAL FUNDING, LLC <br><br> Plaintiff, <br> v. <br> ON4 COMMUNICATIONS, INC. <br><br> Defendant. | **Civil Action No.:** <br><br> **COMPLAINT** |

Plaintiff, LG Capital Funding, LLC. ("Plaintiff" or "LG"), by and through its undersigned attorneys, Garson, Ségal Steinmetz, Fladgate LLP, brings its Verified Complaint against Defendant, On4 Communications, Inc. ("Defendant" or "ONCI") and respectfully alleges as follows:

## THE PARTIES

1. Plaintiff LG Capital Funding, LLC is a limited liability company duly organized under the laws of the New York, having a principal place of business located at 1218 Union Street, Suite 2, Brooklyn, NY 11225. All Members of LG are citizens of New York.

2. Upon information and belief, Defendant On4 Communications, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business located at 1875 Century Park East, 6th Fl., Los Angeles, CA 90067. ONCI is traded publicly on the Over-The-Counter Market under the symbol "ONCI."

## JURISDICTION AND VENUE

3.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.   Venue is proper in this judicial district pursuant to 27 U.S.C. §1391(a), in that it is a district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated.

5.   Further, the agreement from which this dispute arises designates that it is governed and construed in accordance with the laws of the State of New York and that any action brought by either party against the other must be brought in New York.

## FACTS COMMON TO ALL CLAIMS
### The Note

6.   On or about February 10, 2013, ONCI issued a $27,500.00, 8% Convertible Promissory Note to LG (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

7.   The Note provides that LG is entitled to convert all or any amount of the outstanding balance of the Note into shares of ONCI's Common Stock (the "Common Stock"). Specifically, Section 1.1 of the Note provides, in pertinent part:

> The Holder shall have the right from time to time, and at
> any time on or prior to the date of payment . . . to convert
> all or any part of the outstanding and unpaid principal

amount of this Note into fully paid and non-assessable shares of [ONCI] Common Stock. (Ex. A, § 1.1).

8. The Conversion Price was determined to be the Variable Conversion Price, which the Note defines as the Applicable Percentage multiplied by the Market Price. (Ex. A, § 1.2(a)). The Applicable Percentage is 50%. (Ex. A, § 1.2(a)); and the Market Price shall mean "the average of the lowest three (3) Trading Prices (as defined below) for the Common Stock during the ten (10) Trading Day period ending one Trading Day prior to the date the Conversion Notice is sent by the Holder to the Borrower via facsimile (the "Conversion Date"). (Id.).

9. The mechanics of converting the Note required LG to submit a Notice of Conversion. (Ex. A, § 1.4(a)).

10. The conversion feature was essential in inducing LG to enter into the Note. Investment in ONCI came with significant risk due to its unstable financial condition, specifically, its high net loss and limited revenue, as well as the company's own substantial doubts about the ability of ONCI to continue as a going concern without further investment. LG was only willing to purchase the Note if it could earn a return commensurate with the risk. The conversion feature of the Note allowed for such a return. LG's ability to obtain stock at a discount to the market price then resell it on the open market afforded LG the opportunity to obtain a return on its investment from third parties and at a significantly higher rate of return. Any failure by ONCI to honor Notices of Conversion, therefore, would deprive LG of the essential benefit for which it negotiated, and for which it purchased, the Note.

11. To ensure the availability of shares for the purposes of conversion under the Note, Section 1.3 thereunder provides:

> The Borrower covenants that during the period the conversion right exists, the Borrower will reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion of this Note issued pursuant to the Purchase Agreement. (Ex. A, § 1.3).

12. ONCI was required to initially reserve 80,000,000 shares (the "Reserved Amount") and to authorize and reserve five times the number of shares issuable upon full conversion of the Note. (Ex. A, §1.3).

13. Moreover, by signing the Note, ONCI acknowledged that it had "irrevocably instructed its transfer agent to issue certificates for the Common Stock issuable upon LG's conversions under the Note." (Id.).

### ONCI's Willful Refusal to Honor LG's Notice of Conversion

14. On or about October 27, 2016, LG duly submitted a Notice of Conversion to ONCI for a portion of the Note. Specifically, one thousand and five hundred dollars of the principal amount and one thousand and thirteen dollars and twenty-six cents of accrued interest ($1,500.00 principal amount and $1,013.26 accrued interest) of the Note was to be converted into 50,265,200 shares of ONCI Common Stock, representing a conversion price of $.00005 per share. (A true and correct copy of the October 27, 2016 Notice of Conversion is annexed hereto as **Exhibit B**.

15. To date, ONCI has not honored this conversion request by delivering the shares.

16. In response to ONCI's failure to honor the October 27, 2016 Notice of Conversion, on or about November 29, 2016, LG, through counsel, sent a Default

4

Notice Letter to ONCI's CEO, Steve Berman, notifying ONCI of its defaults. (A true and correct copy of the Default Notice is annexed hereto as **Exhibit C**).

17. Despite acknowledging the Note, Mr. Berman made clear that ONCI would not deliver the shares, and instead sought to pay the balance of the Note, in contradiction with the terms of the Note.

18. ONCI's obligation to deliver the 50,265,200 shares of Common Stock requested in the October 27, 2016 Notice of Conversion and pursuant to the terms of the Note is clear and indisputable.

## ONCI's Defaults

19. ONCI's deliberate refusal to honor the Note has led to no less than three (3) Events of Default outlined in Article III of the Note. (Ex. A, Art. III)

20. First, and most importantly, ONCI's failure to deliver 50,265,200 shares of its Common Stock to LG is an Event of Default. Section 3.2 of the Note states that it shall be an Event of Default if:

> The Borrower fails to issue shares of Common Stock to the Holder . . . upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note . . . (Ex. A, § 3.2).

21. The right to conversion is unequivocal, and central to the entire agreement. By not delivering the shares, or hindering delivery of such in any way, ONCI is in breach of the Note.

22. Second, Section 3.3 states that it shall be and Event of Default if "the Borrower breaches any material covenant or other material term or condition contained in this Note."

5

23. Third, Section 3.4 states that an Event of Default shall occur if:

> Any representation or warranty of the Borrower made herein or in any agreement, statement or certificate given in writing pursuant hereto or in connection herewith (including, without limitation, the Purchase Agreement), shall be false or misleading in any material respect when made and the breach of which has (or with the passage of time will have) a material adverse effect on the rights of the Holder with respect to this Note or the Purchase Agreement. (Ex. A, § 3.4).

24. ONCI has breached each representation relating to the delivery of shares upon conversion. By doing so, ONCI's actions have caused the Events of Default under Sections 3.3 and 3.4 of the Note.

25. As of the date of filing, ONCI has not delivered the shares. Therefore, the Company in clear breach of Section 3.1 of the Note.

26. At no point has LG ever, whether formally or informally, in writing or orally, waived ONCI's defaults.

## Remedies

27. Section 3.14 of the Note provides remedies for the various Events of Default outlined in Article III. With regard to a default under Section 3.2, for failure to deliver shares upon conversion, the Note states that LG is entitled to:

> an amount equal to the greater of (i) 150% <u>times</u> the <u>sum</u> of (w) the then outstanding principal amount of this Note <u>plus</u> (x) accrued and unpaid interest on the unpaid principal amount of this Note to the date of payment (the "Mandatory Prepayment Date") <u>plus</u> (y) Default Interest, if any, on the amounts referred to in clauses (w) and/or (x) <u>plus</u> (z) any amounts owed to the Holder pursuant to Sections 1.3 and 1.4(g) hereof (the then outstanding

> principal amount of this Note to the date of payment <u>plus</u> the amounts referred to in clauses (x), (y) and (z) shall collectively be known as the "Default Sum") or (ii) the parity value" of the Default Sum to be prepaid, where parity value means (a) the highest number of shares of Common Stock issuable upon conversion of or otherwise pursuant to such Default Sum in accordance with Article I, treating the Trading Day immediately preceding the Mandatory Prepayment Date as the "Conversion Date" for purposes of determining the lowest applicable Conversion Price, unless the Default Event shall be the Conversion Date), <u>multiplied by</u> (b) the highest Closing Price for the Common Stock during the period beginning on the date of first occurrence of the Event of Default and ending one day prior to the Mandatory Prepayment Date (the "Default Amount") and all other amounts payable hereunder shall immediately become due and payable….
> (Ex. A, § 3.14)

28. LG is entitled to the latter calculation of damages, or the "Parity Value" of the Default Sum. According to this remedy, LG is entitled to the highest amount of Common Stock issuable upon conversion multiplied by the highest Closing Price for the Common Stock during the period beginning on the date of first occurrence of the Event of Default and ending one day prior to the Mandatory Prepayment Date, as well as all other amounts payable under the Note.

29. Based on the Notice of Conversion submitted, LG was entitled to 50,265,200 shares of ONCI Common Stock.

30. Since the Notice of Conversion was delivered on October 27, 2016, the highest closing price of the stock was $0.0043.

31. Accordingly, pursuant to the explicit and agreed-upon terms of the Note, LG is entitled to $216,140.36 as a result of ONCI's failure to deliver the shares pursuant to the October 27, 2016.

7

32.     Furthermore, Section 3.14 states that LG is entitled to all costs and attorneys' fees associated with enforcement and collection under the Note. (Ex. A, § 3.14)

### First Claim for Relief
(BREACH OF CONTRACT)

33.     LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 of this Verified Complaint as if fully set forth herein.

34.     A valid contract exists between the LG and ONCI.

35.     LG performed all of its obligations under the contract.

36.     ONCI breached the contract by failing to deliver shares duly owed to LG.

37.     LG has been damaged by ONCI's failure to perform.

38.     LG, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than two-hundred and fifteen thousand dollars ($215,000.00).

### Second Claim for Relief
(UNJUST ENRICHMENT)

39.     LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38 of this Verified Complaint as if fully set forth herein.

8

40. ONCI has failed to make restitution for the monies loaned to it by and shares of stock owed to LG pursuant to the terms of the Note.

41. ONCI accepted the money then withheld the shares under such circumstances that it created a legal or equitable obligation to account for the money or shares, but it has not compensated LG.

42. LG, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than two-hundred and fifteen thousand dollars ($215,000.00).

### Third Claim for Relief
(COSTS, EXPENSES & ATTORNEYS' FEES)

43. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42 of this Verified Complaint as if fully set forth herein.

44. LG has a right to possession of the shares which ONCI has refused to deliver, which is greater than ONCI's right to possess those shares.

45. ONCI has wrongfully interfered with LG's right to possess those shares, such that ONCI's interference has resulted in the derogation of LG's rights.

46. As a result of ONCI's wrongful conversion of the shares, LG has been damaged in an amount to be determined at trial, but not less than two-hundred and fifteen thousand dollars ($215,000.00).

### Fourth Claim for Relief
(COSTS, EXPENSES & ATTORNEYS' FEES)

47. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 46 of this Verified Complaint as if fully set forth herein.

48. In accordance with the terms of the Note, ONCI agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by LG in collecting any amount under the Note.

49. Therefore, LG is entitled to an award against ONCI for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## Prayer for Relief

**WHEREFORE**, Plaintiff LG CAPITAL FUNDING, LLC seeks judgment against Defendant On4 Communications, Inc. as follows:

i. On the First, Second, and Third Claims for Relief, for damages in an amount to be determined at trial, but not less than two-hundred and fifteen thousand dollars ($215,000.00); and,

ii. On the Fourth Claim for Relief for an award of LG's costs and expenses in prosecuting this action, including reasonable legal fees; and,

iii. On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

iv. For such other further relief as the Court may deem just, proper, and in the interest of justice.

Dated: New York, New York
December 15, 2016

                Respectfully Submitted,

                **GARSON, SEGAL,**
                **STEINMETZ, FLADGATE LLP**
                *ATTORNEYS FOR PLAINTIFF*

                **BY:**     /s/
                      KEVIN KEHRLI (KK7568)
                      MICHAEL STEINMETZ (MS3164)
                      164 West 25th Street
                      Suite 11R
                      New York, NY 10001
                      **TELEPHONE:** (212) 380-3623
                      **FACSIMILE:** (347) 537-4540
                      **EMAIL:** KK@GS2Law.com