UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
LG CAPITAL FUNDING, LLC,

       Plaintiff,

   -against-

ON4 COMMUNICATIONS, INC.,

       Defendant.
---------------------------------------------------------------- x

MEMORANDUM & ORDER

16-CV-6943 (ENV) (RER)

VITALIANO, D.J.

  LG Capital Funding, LLC ("LG") commenced this action against On4 Communications, Inc. ("On4") in December 2016, alleging breach of contract and unjust enrichment for failure to deliver shares of common stock. Compl., Dkt. 1. Presently before the Court are two reports and recommendations ("R&Rs") issued by Magistrate Judge Ramon E. Reyes, Jr. The January 17, 2018 R&R recommends denial of On4's motion to set aside default. Jan. 2018 R&R, Dkt. 27. It was preceded by the July 25, 2017 R&R, which recommended the entry of default judgment against On4 in the amount of $57,056.68. July 2017 R&R, Dkt. 13. For the reasons stated below, the January 2018 R&R, denying defendant's motion to set aside its default, is adopted in its entirety, though the judgment to be entered on default itself has been modified. The July 2017 R&R, granting plaintiff's motion for default judgment, is adopted as modified to award damages of $42,725.42, attorney's fees of $11,344, and costs of $474, for a total of $54,543.42.

Background

  Familiarity with the background facts and procedural history set forth in the R&Rs is presumed. *See* Jan. 2018 R&R at 2-3; July 2017 R&R at 2-3. To provide context for the Court's evaluation of the R&Rs, an abbreviated history will be recounted here.

  In February 2013, On4, a Delaware corporation, executed a $27,500, 8% convertible

1

promissory note (the "Note") running to the benefit of LG, a New York-based LLC. Compl. ¶¶ 1-2, 6; Note, *id.* Ex. A. By its terms, LG could convert any outstanding balance into shares of On4's common stock, at a variable conversion price, as scheduled in the Note, by submitting a notice of conversion. Compl. ¶¶ 7-9; Note §§ 1.1, 1.2(a), 1.4(a). During the period from 2013 to 2015, LG noticed conversion of all but $1500 of the face value of the Note into common stock. Berman Aff. ¶ 8, Dkt. 19-1.

In July 2016, LG inquired whether On4 could either convert the remaining balance to common stock or pay it off in order to "close the books". Berman Aff. ¶ 7. LG was instructed to contact the former CEO of On4, but, having received no answer by October 27, 2016, submitted a notice of conversion requesting conversion of the remaining $1500 in principal and $1013.26 in interest owing on the Note to 50,265,200 shares of its common stock. Compl. ¶ 14; *id.* Ex. B. On4 did not honor the conversion notice, which triggered several events of default. The refusal to convert was apparently based on the CEO's fear that the conversion "would decimate the company due to the egregious terms of the Note". Compl. ¶¶ 15, 19-26; Berman Aff. ¶¶ 12-13. In November 2016, LG notified On4 of its default, but, rather than honor the conversion request, On4 instead "sought to pay the balance of the Note." Compl. ¶ 17; Nov. 29, 2016 Letter, *id.* Ex. C.

The following month, LG threatened to pursue legal action if On4 did not immediately deliver the requested shares. Lerman Opp'n Decl. Ex. H, Dkt. 20-8. According to On4, a check for $1500 was mailed to LG in either November or December 2016, thereby closing out the Note. Berman Aff. ¶¶ 14-15; Berman Reply Aff. ¶ 11, Dkt. 23. Despite that representation, however, no record of such a check exists, and LG insists that it did not receive payment. Berman Reply Aff. ¶ 11; Lerman Decl. ¶ 7, Dkt. 17. On4 does not dispute that the check was

2

never deposited by LG. Berman Reply Aff. ¶ 11.

LG made good on its litigation threat, filing this action and obtaining a certificate of default when On4 failed to respond. *See* Clerk's Entry of Default, Dkt. 7. The motion for default judgment that ensued was referred to Magistrate Judge Reyes, who, after notice, recommended following inquest an award of $45,238.68 in compensatory damages, $11,344 in attorney's fees, and $474 in costs. Mot. For Default J., Dkt. 8; Mar. 27, 2017 Referral Order; July 2017 R&R at 3-8. On4 objected to the R&R ("Def.'s Objection I"), arguing that it had sent LG a check for the outstanding balance of the Note in November 2016, and, having received no notice of any litigation at its business address, thereafter assumed that the matter was resolved until it received a copy of the July 2017 R&R. Def.'s Objection I, Dkt. 16. On4 also contested Judge Reyes's recommendations as to damages and attorney's fees. *Id.* at 2-4.

In light of this representation by On4, the Court afforded it leave to file a motion to vacate default, if there existed a good faith basis to do so. Sept. 5, 2017 Order. In the motion to set aside default, On4 argued that it had inadvertently defaulted in this action due to its own failure to maintain an updated registered agent address with the New York Secretary of State, and could interpose two meritorious defenses—first, that On4 had tendered payment for the balance of the Note, and, second, that the Note was "criminally usurious," meaning that it was void *ab initio*. Mot. to Set Aside Default, Dkt. 19; Def.'s Mem. at 6-7, Dkt. 19-6.

Upon referral of defendant's motion to vacate its default, Judge Reyes recommended denial for lack of good cause to excuse it. Judge Reyes concluded that (1) On4's default was the result of its own "gross negligence"; (2) On4 had provided insufficient evidence of payment in satisfaction of the Note; (3) the criminal usury defense does not apply to securities-convertible loan transactions, which have the character of equity investments; and (4) even if it did, this

would not present a complete, meritorious defense, because there is an open question under New York law as to whether criminal usury voids a contract. Nov. 29, 2017 Referral Order; Jan. 2018 R&R at 4-7. On4 again objected ("Def.'s Objection II"), challenging Judge Reyes's analysis only with regard to the criminal usury defense. Def.'s Objection II at 2-5, Dkt. 28.

## Standard of Review

In reviewing the report and recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In conducting its review, the district court "need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's report and recommendation, provided no timely objection has been made. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district judge, moreover, is required to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). But, objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate judge" do not constitute proper objections, and are thus reviewed for clear error. *Sanders v. City of New York*, No. 12-CV-113 (PKC) (LB), 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015) (citation omitted).

## Discussion

I.  January 2018 R&R

On4 objects to Judge Reyes's R&R recommending that its default not be excused by launching an attack solely against the R&R's assessment of the legal sufficiency of defendant's

4

criminal usury defense. Def.'s Objection II at 3-5. There is no objection, more specifically, to the R&R's conclusions as to On4's gross negligence in failing to update its agent for service information, or the lack of evidence establishing payment made on the Note. There being no specific objection to these conclusions, they are reviewed for clear error, and the Court finds none.

Attention is now focused on the only objection to be considered *de novo*, that is whether On4's putative usury defense has merit. First up is On4's specific attack on Judge Reyes's finding that a criminal usury defense was unavailable in a financing of the type agreed to by the parties and reflected in the Note signed by On4, which is based on a convertible loan giving the lender the right to convert an outstanding balance to the common stock of the borrower. Def.'s Objection II at 3-4; Jan. 2018 R&R at 6. On4 argues that, despite the 8% interest rate plainly stated on the face of the Note, "the conversion discount value of 50% . . . . hides interest in the forms of discounts and reservation of shares for future repayment," setting an interest rate above that permitted under New York's criminal usury law. Def.'s Mem. at 9; *see also* N.Y. Penal Law § 190.40 (setting the criminal usury threshold at a 25% interest rate). On4, in an "everybody is out of step but Johnny argument," then maintains the abundant case law rejecting the application of this defense to convertible loan transactions rests on a misunderstanding of convertibility itself, which has "confused various jurists over the last couple of years." Def.'s Reply Mem. at 8, Dkt. 25.

That is what On4 argued to Judge Reyes, and, without embellishment, it is precisely what it argues on this objection. For instance, On4 again states that "the face of the Note [demonstrates] the intent to benefit from an effectively usurious interest rate, by incorporation of the stated 50% discount on converted shares, as well as the mandatory reservation of shares."

5

Def.'s Objection II at 3. Tellingly, this rehashed argument still treats the conversion price set in the Note as talismanic evidence of a criminally usurious interest rate; no new arguments are at all presented. Rather than offering contrary case law overlooked by Judge Reyes, On4 simply attacks by re-condemning, without cited authority, the case law upon which the January 2018 R&R is founded.[1] Def.'s Objection II at 4. While a proper objection to an R&R may take many forms, not included among them is the mere repetition of unsuccessful arguments, or the insistence that unfavorable case law is the result of the litigant's bugaboo: judicial miscomprehension.

Attacking on a second front, On4 challenges Judge Reyes's conclusion that, even if factually supported, a criminal usury defense would not provide a complete defense at trial, resting his conclusion on the fact that under New York law, it is an "open question" whether a criminally usurious contract is void at its making. Jan. 2018 R&R at 6. On4, puzzlingly, seems to disagree that this is an open question, yet, at the same time, observes that the New York Court of Appeals has not ruled on it, and "[a]ctually, certification is being requested before the Court of Appeals just this week [at the time of writing] on this issue." Def.'s Objection II at 5. Twisting back to its opening proposition, On4 then finds great comfort in that the Second Circuit's description of the issue as "an open question under New York law" was only "dictum." *Id.* (citing *In re Venture Mortg. Fund, L.P.*, 282 F.3d 185, 189 (2d Cir. 2002)). That it might be

---

[1] The Court notes that similar arguments in similar cases have been rejected by several district courts in this circuit. *See, e.g., LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 307 F. Supp. 3d 84, 99 (E.D.N.Y. 2018) (usury defense "fails as a matter of law" with regard to conversion-based transaction); *Adar Bays, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-6231 (NRB), 2018 WL 3962831, at *5 (S.D.N.Y. Aug. 16, 2018) (same).

6

dictum, however, does not render the observation any less accurate. *See Adar Bays, LLC*, 2018 WL 3962831, at *6 (whether to void criminally usurious contract remains open question of law). In any event, On4's veiled contention that this issue is not an open question of law, despite its acknowledgement to the contrary, does not present a proper objection to the R&R's conclusion that there is an open question as to whether a contract charging a criminally usurious rate is void and the conclusion that, in those circumstances, New York's criminal usury law does not provide a complete defense to LG's claim.

In short, when the smoke clears, On4 has not presented any proper written objections to the January 2018 R&R, merely a rehash of already-rejected legal arguments. The Court finds no clear error in the conclusions reached by the thorough, well-reasoned opinion in rejecting those arguments. The Court would have reached the same conclusions on *de novo* review. Accordingly, though the amount of the judgment now differs, the January 2018 R&R is adopted as modified to reflect the change in the amount of the judgment, and the motion to set aside default is denied.

II. <u>July 2017 R&R[2]</u>

On4 objects to the amount recommended in the R&R, following inquest, on three grounds. First, it argues that the outstanding interest on the Note should not factor into the number of shares LG was entitled to receive by exercising its conversion option, because the Note permitted conversion of only the outstanding principal, with the outstanding interest to be

---

[2] Although the R&R was filed on July 25, 2017, defendant had not yet appeared in the action and plaintiff's counsel mailed a copy of the R&R to defendant overnight on July 26, 2017, as directed by Judge Reyes. Certificate of Service, Dkt. 14; *see also* Dkt. 13. Thus, the Court assumes defendant was served by July 27, 2017, and finds defendant's August 10 objection to be timely.

paid in cash and not converted. Def.'s Objection I at 2. Second, defendant takes issue with the use of the stock's actual market value on the date of default to calculate LG's lost profits from its failure to deliver the converted shares to LG. On4 argues that "market price" as defined in the Note should be used. *Id.* at 3. Third, it challenges the award of attorney's fees, asking the Court to reduce by half the recommended fees to be awarded "because of the time wasted as a result of Defendant not having actual notice of the suit as a result of Plaintiff's actions."[3] *Id.* at 4.

At the opening bell, On4's objection to the inclusion of the outstanding interest in the conversion amount is meritless. It is certainly true that the Note, which defines "Conversion Amount" to include principal and "accrued and unpaid interest" as of the date of a notice of conversion, gives On4 "the right to pay any or all interest in cash". Note § 1.1. The chink in the armor of its argument is that it did not take that option; it chose to default instead, leaving it liable to LG's demand for conversion, as recognized in the R&R. Even the phantom check for $1500 supposedly sent to LG would have, at best, covered the principal but not the interest. Its argument that an unconsummated gesture at paying only the principal represents its "intention to exercise its option to pay any or all interest", and therefore the Court should calculate damages as if interest had been paid, makes no sense. Def.'s Objection I at 2. Having reviewed the record and this argument *de novo*, the Court adopts the finding that damages are to be calculated based on the requested conversion of 50,265,200 shares of common stock, accounting for the outstanding principal and interest on the Note.

---

[3] On4 also objects, in so many words, on the ground that it tendered payment in satisfaction of the Note. Def.'s Objection I at 1. Since this issue was briefed in full on the motion to set aside default, and the January 2018 R&R rejecting this argument has been adopted, the Court need not address it again here. Nonetheless, it should be observed that, other than defendant's bald assertions, nothing in the record supports the conclusion that LG actually received payment.

8

As for the argument that lost profits should be calculated using the "market price" as defined in the Note, the Court finds it, too, is flawed. The Note defines "market price" as the average of the three lowest trading prices in the ten-day period preceding a notice of conversion. Note § 1.2(a). However, this defined "market price" is used to determine the variable conversion price, *i.e.*, the contractual price at which LG is entitled to purchase shares; it is not a substitute for actual market value in the calculation of damages. If On4 had fulfilled the demanded conversion, LG would have, in effect, purchased shares at the variable conversion price. The value of the shares to LG post-conversion would, of course, be their actual market price, *i.e.*, the damage lost LG for On4's failure to deliver. It is not speculative that, because On4, in fact, did not honor the conversion request and did not deliver the shares, the damages awarded to LG encompass lost profits based on the actual market value of the undelivered shares at the time of delivery default. *See Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("where the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages"). This objection, consequently, is overruled.

Nevertheless, for reasons related to this last objection, the Court must modify the assessment of damages and judgment awarding them. Because lost profits are determined by "the difference between the contract price and the fair market value of the asset at the time of breach," the Court must deduct the variable conversion price from the fair market value on the date of default, the latter correctly calculated in the July 2017 R&R as $45,238.68. *Sharma*, 916 F.2d at 825; *see also LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, No. 16-CV-1215 (AMD) (SJB), 2018 WL 1521861, at *9 (E.D.N.Y. Feb. 20, 2018) (awarding "the difference between the contract price . . . and the fair market value at the time of the breach"), *R&R*

9

*adopted*, 2018 WL 2057141 (E.D.N.Y. Mar. 8, 2018). LG sought to pay the balance of the Note, or $2513.26, in exchange for 50,265,200 shares of common stock, consistent with the formula for variable conversion price.[4] Subtracting this contract price of $2513.26 from the total market value of $45,238.68, the Court awards LG damages of $42,725.42.

Finally, in its parting shot, On4 objects to the award of attorney's fees as unreasonable, again seeking to place the blame for its own default in this action on LG. Def.'s Objection I at 4. But, the fact that it defaulted yields no reason to reduce LG's legitimate and reasonable attorney's fees. Surely, if On4 had appeared and defended the action, the case would have proceeded on a different track. But, such wishful thinking does not render LG's successful pursuit of a default judgment "wasted" time. *Id.* Finding this objection baseless and no clear error in the recommendation of attorney's fees, the Court awards reasonable attorney's fees of $11,344. On4 does not object to the award of $474 in costs, which the Court also adopts.

---

[4] The variable conversion price set forth in the Note is the Applicable Percentage, defined as 50%, multiplied by "the average of the lowest three (3) Trading Prices" during the ten days preceding the date of the notice of conversion," which was $0.0001. Note § 1.2(a); Def.'s Objection I at 3. Thus, a payment of $2513.26 would entitle LG to 50,265,200 shares as of the date of the Notice.

## Conclusion

In light of the foregoing, the January 2018 R&R, denying defendant's motion to set aside default, is adopted with modification of the amount of judgment awarded. The July 2017 R&R, granting plaintiff's motion for default judgment and awarding damages, is adopted as modified. Plaintiff is awarded damages of $42,725.42, attorney's fees of $11,344 and costs of $474, for a total award of $54,543.42.

So Ordered.

Dated: Brooklyn, New York
September 9, 2018

/s/ Hon. Eric Vitaliano
---
ERIC N. VITALIANO
United States District Judge